UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>TROY CLINTON VAN SICKLE,<br><br>                                    Defendant. | Case No.:  23-CR-10119-RBM-1<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |

Pending before the Court is Defendant Troy Clinton Van Sickle's ("Defendant") Second Motion for Early Termination of Supervised Release ("Second Motion").  (Doc. 7.)  The United States of America ("the Government") filed an opposition to Defendant's Second Motion ("Opposition").  (Doc. 10.)   Defendant filed a reply brief in response ("Reply").  (Doc. 11.)

For the reasons discussed below, Defendant's Second Motion is **<u>DENIED</u>**.

## I.     BACKGROUND

**A. Factual Background**

On June 24, 2019, Defendant pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341.  (*See* Case No. 2:18-cr-00250-JLR (W.D. Wash. June 13, 2023), Doc.

1

116 ("hereinafter W.D. Wash. Doc.") at 2.)  In his plea agreement, Defendant admitted that he engaged in a fraudulent scheme to defraud investors, who were seeking recovery from investment losses, from about May 2011 to about March 2014.  (W.D. Wash. Doc. 36 at 6–10.)  On September 30, 2019, Defendant was sentenced to 30 months of imprisonment followed by three years of supervised release and ordered to pay $250,000 in restitution.  (W.D. Wash. Doc. 116 at 2.)  The sentencing judge determined that Defendant was in criminal history category VI with a sentencing range of 27 to 33 months.  (W.D. Wash. Doc. 84 at 13:20–22.)

On October 12, 2021, the sentencing judge granted the Government's motion to reduce Defendant's sentence to time served.  (W.D. Wash. Doc. 116 at 2.)  Defendant's period of supervised release began on October 12, 2021 and is set to expire on October 11, 2024.  (*Id.*)

In Defendant's declaration in support of the Second Motion, he explains that, while in custody, he completed numerous programs and had no infractions; he also was interviewed by the Government multiple times regarding an investigation of David Linehan and testified at Linehan's trial.  (Doc. 7-1, Troy Van Sickle's Declaration ("Def. Decl.") ¶ 3.)  Defendant was transferred to different facilities to conduct these interviews and was placed in solitary confinement.  (*Id.*)  On supervised release, Defendant has "religiously" made his monthly restitution payments to the Court, has not violated his conditions of supervised release, and has maintained the same employment and residence.  (*Id.* ¶ 4.)  Defendant acknowledges his criminal history is extensive, but notes that his last activity occurred almost 10 years ago and that he has no desire to continue his previous criminal lifestyle.  (*Id.* ¶ 6.)  Defendant has no drug, alcohol, or mental health issues.  (*Id.* ¶ 7.)  He has no history of violent crimes.  (*Id.* ¶ 8.)  Defendant attaches various letters from his employer and friends.  (Doc. 7-2 (Ex. 1).)

Defendant is concerned he may be targeted, directly or indirectly, by Linehan, who is currently incarcerated at Lompoc FCI.  (Def. Decl. ¶ 9.)  Defendant was told if BOP releases Linehan early, it will most likely be at a halfway house in Southern California.

2

(*Id.*)  Defendant states Linehan has an "obsession" with retaliating against those who he believes caused him harm, and Defendant is concerned Linehan will take steps to locate him.  (*Id.*)  Given Linehan's past desire to bomb Trooper Sims, Defendant is concerned for his safety and those of whom he lives and works.  (*Id.*)  Should the Court grant Defendant's motion, he will change addresses and do everything in his power to maintain a degree of anonymity due to the above concern, but he would provide a new address to the Court, ideally under seal, so his location is known if there are any issues with his continued monthly restitution payments.  (*Id.* ¶¶ 10–11.)

### B. Procedural Background

On May 31, 2023, Defendant filed a sealed motion to terminate his supervised release; the motion was fully briefed by the Parties.  (*See* W.D. Wash. Docs. 111, 113–14.) The sentencing judge denied the motion.  (*See* W.D. Wash. Doc. 116.)  On November 9, 2023, Defendant filed a second sealed motion to terminate his supervised release.  (*See* W.D. Wash. Doc. 119.)  However, on November 15, 2023, jurisdiction over Defendant's probation was transferred from the United States District Court for the Western District of Washington to the United States District Court for the Southern District of California.  (*See* W.D. Wash. Doc. 121; Doc 1.)  Accordingly, the sentencing judge denied as moot Defendant's second motion for early termination of supervised release.  (*See* W.D. Wash. Doc. 123.)  Defendant then filed the Second Motion in this district after his probation jurisdiction was transferred.  (Doc. 7.)

## II.   DISCUSSION

Defendant argues this Court should terminate his supervised release early because the Judicial Conference Factors set out in the Administrative Office of the United States Court's Guide to Judiciary Policy, Vol. 8, Part E, "Supervision of Federal Offenders" (Monography 109) § 380.10 (2012), weigh in favor of early termination.  (Doc. 7-2 at 2–3.)  Defendant argues he is aging out of criminality as he turns 53 in March 2024, has not engaged in criminal activity since 2014, and is unlikely to engage in future criminality, especially given the risks associated with returning to custody after testifying against

another inmate.  (*Id.* at 3–4.)  Defendant contends the restitution amount owed will be substantial even at the end of his supervision and the restitution order remains in effect for 20 years following his release.  (*Id.* at 4–5.)  Lastly, Defendant argues he fears retaliation for his testimony against another inmate with a propensity for retaliation, who could be released to the Southern District of California soon, and early release would allow him to relocate without leaving a trail easily discoverable by this other inmate.  (*Id.* at 6–7.)

The Government notes that Defendant has an administrative designation, meaning he only needs to update his Probation Officer if he relocates, alters his employment or contact information, or has contact with law enforcement.  (Doc. 10 at 4.)  Probation informed the Government that required telephonic contact with Defendant occurred once over the last 16 months.  (*Id.*)  Probation informed the Government that Defendant's outstanding restitution balance is $240,361.91.  (*Id.*)  Probation informed the Government that, considering Defendant's extremely limited supervision and significant outstanding restitution, it opposes his request to terminate supervised release early.  (*Id.*)

The Government argues that the nature and circumstances of Defendant's offense and criminal history weigh heavily against early termination of supervised release.  (Doc. 10 at 5.)  Specifically, the Government points out that Defendant's offense involved revictimizing and preying upon financially and emotionally vulnerable victims.  (*Id.*)  The Government also points out that Defendant's 28-year criminal history involved nearly all felonies, including, *inter alia*, "financial crimes featuring pervasive theft and fraud, violations of protective orders involving domestic violence, and perjury."  (*Id.* at 5–6 (citing W.D. Wash. Doc. 39 ("PSR") ¶¶ 34–43).)  The Government argues supervision is necessary to protect the public against the possibility Defendant reverts to crime given his criminal history, his current supervision burden is low, and Defendant fails to identify any substantial burden supervision imposes on his desired conduct.  (*Id.* at 6.)  Regarding Defendant's concern for his safety, the Government contends Defendant may relocate and otherwise obscure his public presence, provided he notifies his Probation Officer.  (*Id.* at

6–7.)  Finally, the Government argues Defendant has failed to provide restitution to his nine victims as he has paid only 3.9 percent of his total restitution.  (*Id.* at 7.)

In response, Defendant argues that the Government's argument that the remaining 10 months of supervision is necessary to protect the public is illusory given his minimal supervision and if he commits another crime, he will be arrested and will likely face a lengthy prison sentence given his extensive criminal history.  (Doc. 11 at 2.)  Defendant contends his Probation Officer set his monthly restitution payments that he has complied with and, due to the Judgment, he has been unable to improve his employment.  (*Id.*)  Lastly, Defendant argues the Government does not address the need to protect Defendant from retaliation from the inmate he testified against.  (*Id.* at 3.)

Under 18 U.S.C. § 3583(e)(1), the Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation."  [A]fter considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'"  *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (quoting 18 U.S.C. § 3583(e)(1)).  "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."  *Id.* Section 3583(e) does not require a petitioner to demonstrate undue hardship or exceptional circumstances.  *See id.*; *see also United States v. Ponce*, 22 F.4th 1045, 1047–48 (9th Cir. 2022) (noting "blanket rule" that early termination requires exceptional circumstances is an improper).

Section "3583(e) requires a district court to consider and weigh certain factors set forth in Title 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), in deciding whether to grant or deny a motion to terminate supervised release." *United States v. Henry*, Case No. 11CR7032-H, 2020 WL 4281966, at *2 (S.D. Cal. June

23, 2020). "Those relevant § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the sentence and sentencing range established for the category of the defendant; (6) any pertinent policy statement by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense." *Id.*

Considering the Section 3553(a) factors, the Court acknowledges Defendant's good behavior during his incarceration and his assistance of the Government in both investigating and testifying against another inmate. The Court commends Defendant on meeting his monthly restitution payments, his continued employment, and not violating the conditions of supervised release. However, Defendant's offense was serious. It involved a several years-long scheme to defraud investors, particularly vulnerable investors who were seeking to recoup investment losses. Defendant's significant criminal history prior to the offense indicates a long-running defiance of the law. The Court acknowledges Defendant's current age of 52 and the length of time since the offense, but Defendant engaged in the offense in his 40s and he has only been back in the community for 25 months. The Court must consider the need to deter fraudulent schemes targeted at vulnerable victims and to protect the public from any potential future crimes of Defendant given his lengthy criminal history.

The Court takes seriously Defendant's concern regarding retaliation from the other inmate that he testified against who may be released soon and may be released somewhere in this district. However, Defendant does not explain to the Court how Defendant's reporting a change of address to his Probation Officer places him at risk or would in any way become available to this other inmate. Nor has Defendant pointed to any other alleged substantial burden imposed by his minimal level of administrative supervision. At the

same time, Defendant still has left to pay the vast majority of his restitution to his nine victims.  The Court is not persuaded that Defendant's providing a change of address to this Court under seal to prevent any future failure to pay restitution would be sufficient given the supervisory expertise and resources of the Probation Department.  The Court agrees with the Government and Probation that, given Defendant's minimal supervision and substantial remaining restitution, early termination is not appropriate at this time.[1]

### III.    CONCLUSION

For the reasons discussed above, having considered the 18 U.S.C. § 3553(a) factors, the Court **DENIES** Defendant's Second Motion.

**IT IS SO ORDERED.**

Dated:  December 18, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[1] As the Supreme Court directs, this Court has given respectful consideration to the nine factors listed in the Judicial Conference recommendations and guidance regarding early termination of supervised release.  *See Hollingsworth v. Perry*, 558 U.S. 183, 711–12 (2010) ("While the Policy conclusions of the Judicial Conference may not be binding on the lower courts, they are 'at the very least entitled to respectful consideration.'") (citation omitted).  However, in considering those factors, the Court is not persuaded Defendant should be granted early termination at this time given his aggravated role in this multi-year fraud offense as detailed in his plea agreement and his 28-year pattern of criminal conduct.